1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11

SIERRA INTERNATIONAL MACHINERY, a California Corporation,

Case No. 1: :21-cv-00723

12

Plaintiff,

ORDER DENYING MOTION TO DISMISS

13

v.

(Doc. No. 6)

14

15

JEREMY AXEL, an individual residing in Colorado; and DOES 1 TO 25, inclusive,

16

Defendants.

17

18       Jeremy Axel admits he has used the plaintiff's trademarks on his website but only to

19   advertise the plaintiff's products. Because he asserts that this precludes liability, he urges the

20   Court to grant his motion to dismiss. For the reasons set forth below, the Court **DENIES** the

21   motion to dismiss.

22                    **I.       FACTUAL AND PROCEDURAL BACKGROUND**

23       Plaintiff originally filed a complaint in the Superior Court of California, County of Kern,

24   asserting Defendant violated federal and state laws for using Plaintiff's federally registered

25   trademarks on its website. (Doc. 1-1.) Plaintiff's complaint contains four separate counts on

26   which it seeks relief: (1) trademark infringement arising under Section 32 of the Lanham Act, 15

27   U.S.C. § 1114; (2) infringement of common law trademark rights; (3) unfair competition by

28   infringement of common law rights; and (4) unfair competition under California Business &

1

1    Professions Code, § 17200. Defendant removed the matter to this Court on August 21, 2020.

2    (Doc. 1.)

3         Plaintiff is the owner of two federally registered trademarks at issue in this case. U.S.

4    Trademark Registration No. 4,343,540 corresponds to the word mark "SIERRA." (Doc. 1-1 at

5    ¶ 7, Exhibit A.) U.S. Trademark Registration No. 5,885,542 covers the stylized version of the

6    word mark "SIERRA" which includes the red coloring and specific font. (*Id.*, Exhibit B.) Plaintiff

7    sells processing equipment to the scrap and recycling industries, also referred to by the parties as

8    "recycling balers." (Doc. 1-1 at ¶¶ 1, 7). Defendant owns a website, located at

9    <www.recyclingbalers.com> which advertises recycling balers and similar machinery sold by

10   third parties. (Doc. 6 at 6.) Plaintiff's trademarks appear at least twice on Defendant's website.

11   The stylized red version of SIERRA appears on a page that lists Defendant's "Waste & Recycling

12   Equipment Preferred Manufacturers" as shown by Exhibit C submitted with the complaint. (Doc.

13   1-1, Exhibit C.) The "Preferred Manufacturers" page lists seven other recycling equipment

14   manufacturers. (*Id.*) Defendant's website also contains the non-stylized version of the SIERRA

15   word mark under the "Equipment Manufacturers" list. (*Id.*, Exhibit D.) In addition, Plaintiff

16   alleges that Defendant's website incorporates the SIERRA mark in at least one of its website

17   URLs and causes the SIERRA mark to be displayed in Google search results. (*Id.* at ¶ 11, Exhibit

18   E.) Plaintiff contends Defendant's website is written in a manner that causes his website to appear

19   in a Google results list when searching for "Sierra Recycling Balers." (*Id.* at ¶ 12, Exhibit F.)

20        Defendant does not contest that he uses or has used the SIERRA marks. (Doc. 6 at 5.)

21   Rather, Defendant argues that he only uses the marks for the purpose of advertising Plaintiff's

22   products. (*Id.*) According to Defendant, this use constitutes nominative fair use and therefore,

23   falls outside the protections afforded by federal and common law trademark rights. (*Id.*)

24   Defendant moved to dismiss the complaint primarily on this basis and argues that Plaintiff's

25   remaining claims collapse into the claim arising under the Lanham Act. (*Id.* at 6-8.

26

27

28

2

**12(b)(6) MOTION TO DISMISS**

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

The Supreme Court explained: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

Defendant moved to dismiss under Rule 12(b)(b) asserting four bases for its motion: (1) Defendant's use of Plaintiff's trademark qualifies as nominative fair use; (2) the Lanham Act

preempts Plaintiff's claim for common law trademark infringement; (3) because Plaintiff's claim for unfair competition by infringement of common law rights are substantially congruent to its common law infringement claim, it fails for the same reasons; and (4) Plaintiff's claim for unfair competition under California Business and Professional Code § 17200 is substantially congruent to its Lanham Act claim. (Doc. 6 at 5.) Plaintiff agrees that its claims for unfair competition under state law are substantially congruent to those arising under the Lanham Act but otherwise disputes Defendant's assertions. (*See generally* Doc. 8.)

**A.      Nominative Fair Use**

      1.      <u>Availability of Nominative Fair Use Defense</u>

First, Plaintiff argues that the nominative fair use defense should not be available to Defendant because he sought to capitalize on customer confusion by putting the SIERRA marks on his website. (Doc. 8 at 10.) The nominative fair use defense applies to cases where the defendant uses plaintiff's mark not to describe its own products but rather to describe plaintiff's products. *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). The Ninth Circuit describes this class of cases as those "where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *Id.* In such cases, the traditional likelihood of confusion analysis under the *Sleekcraft* factors does not apply.[1] *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010). Rather, courts analyze whether the defendant's use constitutes nominative fair use with the following elements: (1) whether the product or service in question is readily identifiable without use of the trademark; (2) whether the defendant used only so much as reasonably necessary of the mark to identify the product or service; and (3) whether the defendant's use of the mark suggests sponsorship or endorsement by the trademark holder. *New Kids*, 971 F.2d at 308; *Toyota*, 610 F.3d at 1175-76.

---

[1] To evaluate a plaintiff's claim for trademark infringement, the Ninth Circuit set forth the eight factors to determine whether defendant's use of the asserted trademark creates a likelihood of confusion: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

1    Plaintiff argues the Court should not apply the nominative fair use test in this case because

2    Defendant deliberately attempted to capitalize on its marks for Defendant's own profit under

3    *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036 (9th Cir. 2003). (Doc. 8 at 10.) In *Horphag*,

4    the Ninth Circuit affirmed that "the nominative fair use defense is available only if 'the use of the

5    trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of

6    one product for a different one." *Horphag*, 337 F.3d at 1041 (citing *New Kids*, 971 F.2d at 307-

7    08). Under *Horphag*, whether a defendant is entitled to the nominative fair use defense depends

8    on the applicability of the three elements defined in *New Kids*. In *New Kids*, the Ninth Circuit

9    explained that the third element, whether defendant's use implies sponsorship or endorsement, is

10   the appropriate measure for whether defendant attempted to capitalize on consumer confusion or

11   appropriate the cachet of one product for a different one. *See New Kids*, 971 F.2d at 307-08.

12   When determining the threshold question of whether to apply the nominative fair use test,

13   however, the defendant's burden is simply to show that it "used the mark to refer to the

14   trademarked good" rather than its own. *Toyota*, 610 F.3d at 1175, 1182-83 (applying the

15   nominative fair use test where auto brokers used the LEXUS trademark in URLs and websites to

16   advertise their services to arrange the purchase or lease of Lexus automobiles). Plaintiff does not

17   contend that Defendant uses the SIERRA mark as reference to Defendant's own recycling balers.

18   (*See* Doc. 1-1 at ¶¶ 9-12.) Instead, Defendant displays the SIERRA marks to reference Plaintiff as

19   a third-party recycling baler manufacturer and to provide a link to Plaintiff's own website. (*Id.*;

20   Doc. 6 at 9.) Even still, Plaintiff argues that the fair use defense should not be available to

21   Defendant because intended "attract internet and prospective consumer traffic" by displaying the

22   SIERRA marks. (Doc. 8 at 10.) The Ninth Circuit held the fair use defense applies even if the

23   defendant's ultimate goal is to promote its own products or services. *Cairns v. Franklin Mint Co.*,

24   292 F.3d 1139, 1151 (9th Cir. 2002); *see also Volkswagenwerk Aktiengesellschaft v. Church*, 411

25   F.2d 350, 352 (9th Cir. 1969) (using the VOLKSWAGEN trademark to advertise defendant's

26   automobile repair business that specialized in repairing Vokswagen and Porshe vehicles qualified

27   as nominative fair use). Thus, even if Defendant's ultimate motive was to promote traffic on his

28   own website, his use of the SIERRA marks on his website to refer to Plaintiff's recycling balers

1    and not his own satisfies the initial burden to apply the *New Kids* elements to Plaintiff's

2    trademark infringement claims.

3         2.    Applicability of the *New Kids* Nominative Fair Use Elements

4    Plaintiff argues that even if the Court applies the nominative fair use test, Defendant has

5    not carried his burden to satisfy each element. (Doc. 8 at 11.) Once the Defendant shows the

6    nominative fair use test applies, the burden shifts to the Plaintiff to show that the *New Kids*

7    elements have not been met. *Toyota*, 610 F.3d at 1182-83. Although it may be Plaintiff's ultimate

8    burden to show the fair use elements are *not* met, at the motion to dismiss stage, the court must

9    still consider all facts and reasonable factual inferences in the light most favorable to the plaintiff.

10   *See Pasadena Tournament of Roses Ass'n v. City of Pasadena*, No. 2:21-CV-01051-AB-JEM,

11   2021 WL 3553499, *3 (C.D. Cal. July 12, 2021) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94

12   (2007) ("a judge must accept as true all of the factual allegations contained in the complaint").

13   The nominative fair use elements are "conjunctive," and thus, Plaintiff need only show one of

14   these elements has not been met to prevail at the motion to dismiss stage. *See Yeager v. Cingular*

15   *Wireless, LLC*, 627 F.Supp.2d 1170, 1178 n.9 (E.D. Cal. June 12, 2008).

16        a.    *Whether the Product Is Readily Identifiable Without Reference to Mark*

17   Plaintiff argues that Defendant could have identified Plaintiff's products by referring to

18   them as "'Sierra' in white, generic font . . . without infringing its stylized red trademark." (Doc. 8

19   at 11.) Plaintiff also argues it was not necessary for Defendant to use both marks—the SIERRA

20   name in generic font and SIERRA in the stylized font and color—in multiple locations on

21   Defendant's website. (*Id.*) Defendant argues that given number of recycling baler manufacturers

22   in the industry and "the generic nature and variety of recycling equipment sold by such parties,"

23   use of both SIERRA marks was "necessary to inform consumers of the products available from

24   Sierra." (Doc. 6 at 9.)

25   The Ninth Circuit has held that a defendant need not create a generic description when

26   referring to plaintiff's specific products. *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d

27   884, 894 (9th Cir. 2019) (holding defendant properly used both trademarks—one corresponding

28   to the trademarked service name and one corresponding to the company name—because

6

defendant "needed to communicate" regarding plaintiff's "specific offering"). Here, Defendant displayed the SIERRA marks to communicate to consumers about the specific recycling equipment provided by Plaintiff. (Doc. 6 at 8; Doc. 1-1, Exhibits C-D.) Thus, Defendant at least needed to use the word "Sierra" for accurate communication to website customers. The extent of Defendant's use of the SIERRA marks, including the stylized red font and the number of times the marks appear on the website, is better addressed under the second element of the *New Kids* test—whether the defendant used more of the mark than necessary.

> b.   *Whether Defendant Used More than Necessary of Plaintiff's Mark*

Plaintiff argues that even if Defendant "may have been entitled to refer to Sierra's products by name," Defendant did not need "to use the mark's distinctive lettering" because that distinctive lettering was not reasonably necessary to identify Sierra's products. (Doc. 8 at 11.) Plaintiff cites to *Cairns* to support its proposition. (*Id.*); *see also Cairns*, 292 F.3d at 1154. The Court held what is "reasonably necessary to identify the plaintiff's product differs from case to case." *Cairns*, 292 F.3d at 1154. In *Cairns*, the defendant, who sold Princess Diana Dolls, reasonably needed to incorporate distinct features of Princess Diana, such as her royal tiara and bolero jacket, for customers to recognize the princess. *Id.* In contrast, in *Playboy Enterprises v. Welles*, defendant's repeated use of the stylized and abbreviated version of plaintiff's mark "PMOY '81" was not necessary to describe plaintiff's product where the alternative full-name "Playboy Playmate of the Year 1981" adequately identified the product. 279 F.3d 796, 804-05 (9th Cir. 2002).

Defendant used both the plain text version of the SIERRA mark and the stylized red version as covered by Plaintiff's U.S. Trademark Registration No. 5,885,542. (Doc. 1-1 at ¶¶ 9-12.) As Plaintiff argues, Defendant's use of only the plaint text version in one portion of his website suggests that this alternative adequately identifies Plaintiff product without the need to display Plaintiff's stylized SIERRA mark. (Doc. 8 at 11.) Defendant responds that the use of the stylized features and coloring does not "automatically bar application of the nominative fair use defense" if reasonably necessary in the context of the use. (Doc. 9 at 3-4.) Defendant relies on *Aviva USA Corporation v. Vazirani*, 902 F. Supp. 2d 1246 (D. Ariz. 2012). In *Aviva*, the court

1  found that the defendant's use of distinctive elements of the plaintiff's protected trademark—a

2  "stylized blue font on a yellow background with rays of light in the background"—to refer to

3  plaintiff was a factor weighing in favor of finding that the defendant used more of the mark than

4  was necessary under the second element of the *New Kids* test. *Id.* at 1264-65. Ultimately,

5  however, the court concluded defendant's use of the mark did not appear in a commercial or

6  competitive manner; rather, the context showed defendant criticized plaintiff's products on its

7  website. *Id.* The court reasoned that because the purpose of the nominative fair use test is to

8  address the risk that defendant's use may "inspire a mistaken belief on the party of consumers

9  that the speaker is sponsored or endorsed by the trademark holder," the context of defendant's

10  negative commentary eliminated this concern. *Id.* (quoting *Toyota*, 610 F.3d at 1176).

11        On the one hand, the stylized version of SIERRA does not include as many distinctive

12  elements as the defendant in *Aviva* who incorporated all pictorial details of the stylized logo. The

13  stylized version of SIERRA only includes a specific font type and color. (Doc. 1-1, Exhibit C.)

14  On the other hand, the SIERRA marks on Defendant's website do not appear in a critical context

15  like the marks in *Aviva*, because here, Defendant refers to SIERRA as a "preferred" recycling

16  baler manufacture. (*Id.*) Moreover, the availability of the generic SIERRA word mark suggests

17  that, like in *Playboy Enterprises*, Defendant did not need the stylized version to readily identify

18  Plaintiff's products. At the motion to dismiss stage where the Court must take Plaintiff's

19  reasonable factual inferences as true, the Court finds Defendant's use of both the generic and

20  stylized trademarks without the critical context found in *Aviva* does not satisfy the second

21  element of the *New Kids* test.

22              c.      *Whether Defendant's Use Implies Endorsement or Sponsorship*

23        Under the third element, the question turns on whether Defendant's use suggests that

24  Plaintiff "expressly or by fair implication connotes endorsement or joint sponsorship." *New Kids*,

25  971 F.2d at 309. Implied sponsorship or endorsement exists, for example, when a company uses a

26  celebrity's name in its advertisements without authorization. *See Yeager*, 673 F. Supp. 2d at 1178

27  (finding a jury may find implied endorsement where defendant incorporated the name of a pilot,

28  famous for first breaking the sound barrier, in its advertisements without the pilot's consent).

Courts have held using marks in a manner that positively promotes the plaintiff's products may create an inference of sponsorship or endorsement. *James v. Am. Pac. Univ.*, Civ. No. 05-00746 JMS/BMK, 2006 WL 8436132, at *5 (D. Haw. Mar. 3, 2006) (finding defendant's use of plaintiff's mark in advertising materials to promote upcoming seminars and training sessions created a potential likelihood of implied sponsorship or endorsement). Conversely, using the mark to critique plaintiff's products strongly suggests no sponsorship or endorsement. *See Applied Underwriters*, 913 F.3d at 896-87 (holding a reasonable customer would not assume sponsorship or endorsement where an advertisement referred to plaintiff's product as "sophisticated yet controversial" and offered strategies to help customers opt out of plaintiff's programs).

Defendant maintains that a reasonable customer would not assume Plaintiff sponsored or endorsed Defendant's use of the SIERRA mark because his website does not expressly state that he is an authorized Sierra dealer. (Doc. 6 at 9). Defendant further argues that the SIERRA mark appears in the context of a list of preferred manufacturers from which website visitors would infer as dealer recommendations. (*Id.*) Plaintiff argues that a customer could reasonably infer that a list of preferred equipment manufactures suggests Defendant is a sponsored dealer of Sierra products or has been endorsed to sell Sierra products. (Doc. 8 at 11-12.) Plaintiff also points to a lack of disclaimer by Defendant to negate any potential customer confusion. (*Id.*). In response, Defendant argues that an express disclaimer eliminating the possibility of customer confusion is not required. (Doc. 9 at 5 (*citing Toyota*, 610 F.3d at 1182).)

Although it is true that an express disclaimer is not required (*Toyota*, 610 F.3d at 1182 ("While not required, such a disclaimer is relevant to the nominative fair use analysis.")), the Court finds that Plaintiff has met its burden at the motion to dismiss stage to plead sufficient facts that a consumer may reasonably infer sponsorship or endorsement from Defendant's use of the SIERRA mark. In its complaint, Plaintiff alleges Defendant advertises Plaintiff's recycling balers "under the SIERRA brand and uses the SIERRA brand to attract internet traffic of prospective customers." (Doc. 1-1 at ¶ 8.) Plaintiff attached two printouts of Defendant's website depicting how its marks appear in a list of "Preferred Manufacturers" and "Equipment Manufactures." (*Id.*,

Exhibits C-D). Plaintiff further alleges that Defendant's use causes his website to appear in a Google results list when searching for Plaintiff's company. (*Id.* at ¶¶ 11-12, Exhibits E-F.) Plaintiff contends that use of the SIERRA marks in this manner has caused and will continue to cause confusion "as to sponsorship of, or affiliation with AXEL's website by SIERRA." (*Id.* at ¶ 15.)

Even though the finder of fact may ultimately interpret Defendant's list as merely a suggestion of potential equipment manufacturers and directing customers to those third-party websites, it is also plausible that the finder of fact could conclude that the list implies that Defendant has the approval or received some sort of incentive to include those particular recycling baler manufacturers on its website. The website's reference to SIERRA as one of the "preferred" equipment manufacturers creates a positive and promotional association with Plaintiff. At the motion to dismiss stage, the court must view the evidence in a light most favorable to Plaintiff and therefore must assume that the list infers approval (i.e., sponsorship or endorsement).

The positive association between Defendant's use of the SIERRA marks and Plaintiff's products departs from the line of cases where courts found no sponsorship or endorsement because the defendant used the mark in the context of criticizing or negatively commenting on the plaintiff's products. *See, e.g.*, *Aviva*, 902 F. Supp. 2d at 1264-65 (granting summary judgment where defendant offered insurance services in competition with plaintiff and displayed the plaintiff's mark on its website to critique plaintiff's offerings). Unlike in cases where the defendant accompanied the trademark with an express disclaimer to ward off any potential confusion, Defendant's website promotes Plaintiff's products without any clear indication of the nature of his affiliation with Plaintiff and therefore, presents a question of fact as to whether a reasonable customer would assume he had Plaintiff's endorsement or sponsorship. *Volkswagenwerk*, 411 F.2d at 352 ("The question of whether [defendant's] business was adequately distinguished from appellant's is one of fact."); *but see Dr. Seuss Enters., L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1091 (S.D. Cal. 2017) (finding no evidence to suggest a sponsorship or endorsement on a motion to dismiss where defendants expressly disclaimed any

1   affiliation with plaintiff).

2        Plaintiff bears the ultimate burden to prove that this positive association does *not* convey

3   sponsorship or endorsement. However, at the motion to dismiss stage, the Court must construe all

4   facts and reasonable factual assumptions in the favor of Plaintiff. The complaint makes factual

5   allegations that Defendant's use of the SIERRA marks as part of the "preferred" dealers may

6   cause confusion or mistake as to the "source, *sponsorship*, or origin of SIERRA's products and

7   AXEL's products and as to *sponsorship* of, or affiliation with, AXEL's website by SIERRA."

8   (Doc. 1-1 at ¶ 15). Plaintiff's exhibits submitted with the complaint create a factual basis for this

9   allegation. (Doc. 1-1, Exhibits C-F.) Plaintiff's factual assertions and inferences amount to more

10   than mere conclusory allegations as to whether a reasonable consumer might infer sponsorship or

11   endorsement. Plaintiff, therefore, has met its burden to plead sufficient facts to rebut the

12   applicability of the nominative fair use test and whether Defendant's use of the mark implies

13   sponsorship or endorsement under the third element of the fair use test.

14   **B.**    **Preemption of Common Law Trademark Infringement by Lanham Act**

15        Defendant argues Plaintiff's claims arising under common law in California are

16   preempted by the Lanham Act. (Doc. 6 at 10.) Defendant states that "where the rights holder does

17   not allege a single new fact or element in support of the trademark infringement claim, such a

18   claim raised under California common law is exactly the type of claim that federal trademark law

19   is designed to preempt." (*Id.*) Defendant's only authority for this proposition is a single case from

20   the Northern District of California. *Capcom Co., Ltd. v. MKR Group, Inc.*, No. C 08-0904 RS.,

21   2008 WL 4661479 (N.D. Cal. Oct. 20, 2008).

22        Defendant does not address the line of Ninth Circuit case law establishing that the

23   Lanham Act generally does not preempt a plaintiff's rights under California law. *See Golden*

24   *Door, Inc. v. Odisho*, 646 F.2d 347, 352 (9th Cir. 1980) ("Under this analysis § 1115(b) cannot be

25   said to preempt this plaintiff's rights under California law. By extending to federal registrants

26   greater protection than is available under the Lanham Act, California law, like the Act, protects

27   both the public from confusion about the services and products it is receiving and the public

28   relations investment of plaintiff."). Rather, the Ninth Circuit has held that a party's rights under

California law are preempted by the Lanham Act only when state law conflicts with the protections under the Lanham Act. *Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 409 (9th Cir. 2015) ("As the Lanham Act does not expressly preempt state law, *Mariniello v. Shell Oil Co.*, 511 F.2d 853, 857 (3d Cir. 1975), and courts have said that it does not occupy the field, *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 41 (1st Cir. 2006), the ordinance can only be preempted if it conflicts with the Lanham Act."). Instead, courts regularly analyze federal and California trademark claims *together* because they are "substantially congruent." *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004). Moreover, Defendant's reliance on *Capcom*, 2008 WL 4661479, for the proposition that a California trademark claim is preempted whenever the rights holder does not allege additional facts or elements in support of the California trademark claim has been persuasively distinguished by a more recent decision. *See Keep a Breast Found. v. Seven Grp.*, No. 11-CV-00570 BEN WMC, 2011 WL 3240756, at *4 (S.D. Cal. July 28, 2011) (explaining that *Capcom* relied on precedent concerning patent law, not trademark law, in reaching its conclusion). The Court declines to deviate from well-established Ninth Circuit law and finds Plaintiff's common law trademark claims are not preempted.

**C.    Unfair Competition Claims**

Defendant argues Plaintiff's claims for unfair competition arising under common law and under California Business & Professions Code § 17200 are substantially congruent to Plaintiff's Lanham Act claims and therefore, also fail based on the nominative fair use defense. (Doc. 6 at 11-12.) For the reasons discussed above related to the Lanham Act claims, the Court finds Defendant likewise has not met its burden to show the complaint fails to state a plausible claim with respect to the unfair competition causes of action.

**ORDER**

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 6) pursuant to Fed. R. Civ. Pro. 12(b)(6) is **DENIED**.

IT IS SO ORDERED.

Dated:   **March 3, 2022**

UNITED STATES DISTRICT JUDGE

12